# Commercial Insurance Company of New Jersey v. Vincenzo Papandrea et al

[159 A.2d 333]

January Term, 1960

Present: **Hulburd, C. J., Holden, Shangraw and Smith, JJ. and Daley, Supr. J.**

Opinion Filed March 2, 1960

*Edmunds, Austin & Wick* for the plaintiff.

*Monti & Calhoun* for defendant Sormani.

*Finn & Davis* and *Jose M. Monte* for defendant Papandrea.

**Holden, J.** The question presented is whether declaratory relief in equity is available to determine an automobile liability insurer's duty to defend two conflicting actions at law. The problem centers on the identity of the operator of the insured vehicle.

It appears from the complaint that the plaintiff issued its policy to Vincenzo Papandrea to cover his 1950 Chevrolet automobile. During the term of the contract, September 5, 1956, Papandrea and Pietro Sormani were traveling in the insured vehicle when it left the Barre-Plainfield highway. Sormani died and his administratrix instituted an action in Washington County Court against the named insured, Papandrea, in September 1957 seeking to recover in negligence for the next of kin. The complaint attributes Sormani's death to the negligent operation of the car by Papandrea, in permitting the insured vehicle to leave the highway.

In January 1958, Papandrea presented a claim to the commissioners in Sormani's estate to recover for injuries received in the accident. He charges that it was Sormani who negligently operated the insured vehicle. The plaintiff has been called upon by both Papandrea and Sormani's estate to defend the claims asserted against them.

On these allegations, the plaintiff seeks declaratory relief and joins both defendants to determine whether the insured vehicle was operated by Papandrea or Sormani. The plaintiff also requested temporary relief to stay the actions at law until the identification of the operator in the accident is settled. The defendant Sormani demurred to the complaint. The demurrer was sustained and the complaint dismissed. The

plaintiff appeals from this ruling. All parties appeared in this Court and filed separate briefs.

■ The Uniform Declaratory Judgments Act states its purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations * *." 12 V. S. A. §4711. To this end, the statute confers upon the county courts, and courts of chancery and probate, within their respective jurisdictions, the power to adjudicate and declare the rights of the parties in legal controversies, at their inception. *Gifford Memorial Hospital* v. *Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480. The declaration may be affirmative or negative in form and effect. 12 V. S. A. §4711. And a party to a contract may obtain judicial construction of his agreement without the necessity of a prior breach. 12 V. S. A. §4713.

The plaintiff comes within the framework of the act in each of these particulars. Yet, the defendants oppose the application of the act on the contention that declaratory relief is not available to settle a disputed issue of fact. The defendants maintain there is no controversy here that cannot be settled by resort to the insurance contract itself and hence the complaint was properly dismissed.

■ The argument is not new, and it troubled the courts considerably until it was put at rest by the opinion of Chief Justice Hughes in *Aetna Life Insurance Company* v. *Haworth*, 300 U. S. 277, 57 S. Ct. 461, 464, 81 L. Ed. 617, 622. See Borchard, Declaratory Judgments 2d ed. (1941) p. 393. The question was whether an issue of fact between the insurer and its insured as to policy coverage, presented an actual controversy that could be settled under the Federal Declaratory Judgment Act. The answer given in the language of the opinion was "there is here a dispute between parties who face each other in an adversary proceeding. The dispute relates to legal rights and obligations arising from contracts of insurance. The dispute is definite and concrete, not hypothetical or abstract. * * That the dispute turns upon questions of fact does not withdraw it, as the respondent

seems to contend, from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. * * "

■ The policy contemplates protection to persons other than the named insured. It has an additional insured clause to afford coverage to any person legally responsible for the use of the vehicle provided the use of the vehicle is with the consent of the named insured. *Gulla* v. *Reynolds*, 151 Ohio St. 147, 85 N. E. 2d 116, 120; *Home Indemnity Co.* v.*Bowers*, 194 Tenn. 560, 253 S. W. 2d 750, 36 A. L. R.2d 668, 671. The decedent, Sormani, fulfills the description of a "person legally responsible" within the meaning of the policy definition, provided he was operating the insured vehicle at the time it left the highway. *Maryland Casualty Co.* v. *Ronan* (C. A. 2d) 37 F.2d 449, 72 A. L. R. 1360, 1362; see also, annotations 72 A. L. R. 1414, 106 A. L. R. 1263.

The policy requires the plaintiff to * * * "pay on behalf of the insured all sums which the insured shall become obligated to pay as damages because of bodily injury, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile * * *. and to defend any suit alleging such injury and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

In the brief filed in behalf of the Sormani Estate, the administratrix concedes that one of the actions at law which the plaintiff has been called upon to defend is groundless, and probably false or fraudulent. Notwithstanding the presence of fraud, it is argued that the plaintiff is bound by its contract to defend both actions,—the false as well as the true. In this both defendants join to urge that the dilemma which confronts the plaintiff is imposed by its own insuring agreement.

The roots of our problem go deeper than this. It turns on whether or not there was an additional insured in this accident. Was Sormani operating the insured vehicle or not? If he was, his representative's request to the plaintiff to defend the action against the estate is well founded and must be

honored under the policy. On the other hand, if, in truth, Papandrea was at the wheel the insurer has no obligation to defend Sormani's estate, for in that event the decedent was not a person legally responsible for the operation of the insured car.

In the first instance, the duty of the insurance carrier to defend a claim is measured by the allegations upon which the claim is stated. The provision in the policy requiring the insurer to defend the insured in any suit, although it be groundless, false or fraudulent, is to the same effect. It only confirms by contract what the courts have held in countless cases. *Goldberg* v. *Lumber Mutual Casualty Ins. Co.*, 297 N. Y. 148, 77 N. E. 2d 131, 133; *Klefbeck* v. *Dous*, 302 Mass. 383, 19 N. E. 2d 308, 311; *Lumbermen's Mutual Casualty Co.* v. *McCarthy*, 90 N.H. 320, 8 A.2d 750, 126 A. L. R. 894, 896; annotation 50 A. L. R. 2d 461 et seq. This rule applies with a just result where the claimant is a stranger to the policy. It precludes the insurer from determining, ahead of trial, the truth or falsity of a claim that comes within the policy coverage. But the complaints which the plaintiff has been called upon to defend in this instance furnish no reasonable measure of the duty to defend since one claim is admittedly false, if not fraudulent, and neither claimant purports to be a stranger to the policy. As to the Sormani claim, the estate alleges Sormani was not the operator, in effect an outsider to the insurance contract. Yet for the purpose of furnishing insurance protection, the plaintiff is called upon to defend his estate, on the implied representation that the decedent was in fact the operator.

If the plaintiff relies on the statement of Sormani's administratrix in the wrongful death action that the decedent was only a passenger and declines to defend the estate on the strength of this allegation, it is confronted with the perils and the consequences of a breach of contract. See *St. Louis Dressed Beef & Provision Company* v. *Maryland Casualty Co.*, 201 U. S. 173, 26 S. Ct. 400, 50 L. Ed. 712, 716, and annotation in 49 A. L. R.2d 711.

Turning to the alternative choice available, the plaintiff may undertake the defense of the action. But this too must

be done at the risk of being cast by the doctrine of waiver and estoppel. The consequences might well extend beyond the duty to defend, to full indemnity. *Beatty* v. *Employers' Liability Assurance Corp., Ltd.*, 106 Vt. 25, 35, 168 A. 919.

It is equally true that in the perspective of this proceeding, Papandrea, as the named insured, has undertaken a dual role. As a defendant in the action at law, he stands as a party to the insurance contract and one entitled to its full benefit. When he takes the offensive, to charge the other occupant of the insured vehicle, he speaks not as a party to the policy, but as a stranger.

■ When either defendant assumes the role of an insured under the liability contract, his relations with the plaintiff become mutually fiduciary. The insurer and the insured alike owe to each other "the duty of the utmost good faith in their dealings together, and in exercising the privileges and discharging the duties specified in and incident to the policy contract." Powers, C. J. in *Johnson* v. *Hardware Mutual Casualty Co.*, 109 Vt. 481, 491, 1 A.2d 817, 820. In this relationship of trust, the insurance carrier and its insured, whether named or additional, are required to rise to something higher than the standards of the market place. Full candor and complete honesty are required. *Meinhard* v. *Salmon*, 249 N.Y. 458, 164 N. E. 545, 546, 62 A. L. R. 1; *Johnson* v. *Hardware Mutual Casualty Co., supra*, 109 Vt. at 491, 1 A.2d at 820.

■ It may be argued that the mistaken identity of the operator on the part of one of the plaintiffs in the counter-actions at law was honestly conceived and innocently alleged. The law inclines us to such a presumption. *Patch* v. *Squires*, 105 Vt. 405, 410, 165 A. 919. But whether the origin of the error is in fraud or honest mistake is of little consequence. Either element properly takes the case into equity jurisdiction. *Vermont-Peoples' National Bank* v. *Robbins' Estate*, 105 Vt. 283, 289, 166 A. 6; *Jones* v. *Stearns*, 97 Vt. 37, 44, 122 A. 116, 31 A. L. R. 653.

The complaint does not indicate an effort by the insurance company to shirk its responsibility under the contract. The

tone of the plaintiff's appeal is to the effect that performance is expected. When performance is undertaken it should be free from any conflict of false or pretended duty, adverse to the interest of the real insured and his insurer alike. In the face of the conflicting claims asserted against the insurance contract, the insurer is entitled to have its duty made clear in the unmistakable words of an adjudication in equity.

We find no occasion in this proceeding to search for the answer to the question of whether a judgment as to liability in one of the negligence actions will conclude the other by *res judicata*. The result might affect the plaintiff's duty to indemnify. But the duty to defend is substantially broader than the duty to indemnify. *Danek* v. *Hommer*, 28 N.J. Super. 68, 100 A.2d 198, 203, affirmed, 15 N.J. 573, 105 A.2d, 677; *Wilson* v. *Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304, 50 A. L. R. 2d 449, and annotation. That the trial of either action furnishes no adequate remedy as to the duty to defend is obvious from the possibility that the first case reached for trial may have for its defendant one who is not entitled to protection as an additional insured under the policy.

■ The defendants would deny this result and have us affirm the dismissal of the action by the court below as a discretionary ruling. We note that the demurrer which called the court to pass on the sufficiency of the complaint did not invoke the court's discretion. It would appear the court ruled as a matter of law. In any event, the purposes of declaratory relief furnish the guide and criteria for the court's discretion. When a declaratory decree will serve a useful purpose in clarifying the legal relations of the parties or if it will terminate the uncertainty and insecurity of the controversy, the court should render the relief prayed. See 12 V. S. A. §§4715-4716; Borchard, Declaratory Judgments, 2d ed. (1941) 299. Here it is clear a declaratory decree should reach both objectives. The cause should have been retained by the court of chancery.

*Order sustaining the demurrer and dismissing the complaint reversed and cause remanded.*