2004 VT 121

### Allstate Insurance Company v. Janet Vose, Jeffrey Vose and John Finlay, II, on behalf of Minor, S.C.

[869 A.2d 97]

No. 04-074

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed December 17, 2004

*Bret P. Powell* of *Unsworth Powell Barra Orr & Bredice, PLC,* Essex Junction, for Plaintiff-Appellee.

*Kurt M. Hughes* of *Murdoch & Hughes,* Burlington, for Defendants-Appellants.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** Janet Vose, Jeffrey Vose, and John Finlay, II, acting as legal representative of S.C., a minor, appeal from the trial court's order granting summary judgment to Allstate Insurance Company. The Voses sought insurance coverage

after being sued for claims stemming from Janet Vose's abuse of S.C., a disabled foster child in their care. Allstate filed a complaint for declaratory relief, asserting that its policy did not cover the acts alleged in the underlying complaint. The trial court agreed, and granted summary judgment in Allstate's favor. The trial court found that there had not been an "occurrence" within the meaning of Allstate's policy because Janet Vose had intended to harm S.C. Because the policy excluded coverage for injuries caused by the intentional acts of "any insured," the court found no coverage for the negligence claim raised against Jeffrey Vose. The court thus concluded that Allstate had no duty to defend or indemnify the Voses. On appeal, appellants argue that summary judgment was inappropriate because disputed issues of material fact exist, and Allstate was not entitled to judgment as a matter of law. We affirm.

¶ 2. The following facts are undisputed. The Voses were foster parents licensed by the State of Vermont. In February 2000, S.C., a blind and developmentally disabled minor, was placed in their care. In August 2000, Janet Vose put the child in the bathtub and turned on only the hot water. S.C. suffered severe burns as a result. S.C. was removed from the Voses' home, and Janet Vose subsequently pled nolo contendre to first degree aggravated domestic assault. She was sentenced to fifteen years in jail, all suspended but six years.

¶ 3. Janet Vose later acknowledged committing other acts of abuse against S.C., including swinging the child by her feet against a wall and knocking out one of her teeth, slapping her across the face so hard that the child had a mark on her face for several days, throwing S.C. across the room causing the child's mouth to bleed, pulling the child's hair, and putting the child in an empty dresser drawer and closing the drawer for approximately five minutes.

¶ 4. As to the burns inflicted on S.C., Vose testified that she placed S.C. in the bathtub, and turned on just the hot water. The bathtub drain was closed. Janet Vose then left the room. Vose testified that she acted as she did because she did not want S.C. to "be happy." S.C. suffered second degree burns as a result of Janet Vose's acts.

¶ 5. In April 2002, attorney John Finlay, II, acting as legal representative of S.C., filed a complaint against the Voses, raising claims of assault and battery and negligence. The complaint alleged that on numerous occasions between February and August 2000 Janet Vose had caused bruising, and other physical and emotional injury to S.C. that was plainly visible to others, including Jeffrey Vose. The complaint stated that S.C. had suffered serious burns after Janet Vose

placed her in the bathtub, turned on the hot water, and left the room. The complaint also alleged that the Voses had breached a duty owed to S.C. by directly causing, or allowing S.C. to suffer, severe physical and emotional harm.

¶ 6. At the time of the acts alleged in the complaint, the Voses were insured under a homeowners insurance policy issued by Allstate. Under the terms of its policy, Allstate agreed to pay damages that "an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies . . . ." The policy defined an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury . . . ." The policy excluded coverage for "any bodily injury . . . intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person."

¶ 7. Allstate entered into a reservation of rights and nonwaiver agreement with the Voses, and it retained counsel to defend them in the underlying action. In September 2002, Allstate filed a complaint for declaratory relief, seeking to be relieved of any obligation to defend and indemnify the defendants in the underlying action. It alleged that the injuries to S.C. were not caused by an occurrence; that they were intended or were reasonably expected to result from Janet Vose's actions; and that coverage was also barred by a professional services exclusion and an exclusion barring recovery for bodily injury to a regular resident of the premises. Allstate later moved for summary judgment, asserting that the undisputed facts demonstrated that the acts alleged in the underlying complaint were not covered under its policy.

¶ 8. In February 2004, the court granted summary judgment in Allstate's favor, concluding that Allstate had no duty to defend the Voses because there had not been an "occurrence" within the meaning of its policy. The court compared the allegations in the underlying complaint with the terms of the policy. In conducting its analysis, the court did not consider the negligence claim raised against Janet Vose, finding it unsupported by the facts alleged in the complaint. The court recognized that an "accident" could occur despite the intentional nature of the insured's conduct. The critical inquiry, the court explained, was whether the injury was intended or expected. The court found that, in this case, Vose's acts were so likely to result in injury that, as a matter of law, it could infer her intent to harm from the nature of her

acts. As the court explained, the undisputed facts established that Janet Vose's actions — including throwing the four-year-old blind and developmentally delayed child across a room; kicking; slapping; pulling the child's hair; swinging the child into a wall; placing the child in the bathtub knowing that only the hot water was running and leaving the room; and knocking the child onto the ground — were all done, as Janet Vose admitted, to make the child "unhappy."

¶ 9. Because the court inferred Janet Vose's intent to harm as a matter of law, it rejected her assertion that she had not intended to harm S.C. through her actions. The court also rejected the argument that Janet Vose lacked the mental capacity to control her actions. In support of this assertion, counsel for S.C. had pointed to Janet Vose's testimony regarding her lack of intent, and a document entitled "Family Life Services Staff Review Sheet," which noted, presumably with respect to Janet Vose, "mental stability?" as one issue to be addressed. The court explained that there were no supporting affidavits showing who had created this document, when it was created, how it was used, or how to interpret this one brief notation. The court found that, even accepting the facts put forth by counsel as true, they merely raised a suggestion that, at one point, someone thought that it might be a good idea to question Janet Vose about her mental stability. The court found these facts insufficient to create a triable issue as to whether Janet Vose lacked the mental capacity to govern her conduct or to establish that she was not acting under her own free will in carrying out her stated intent to cause the child "unhappiness" through physical abuse. The court thus concluded, as a matter of law, that the undisputed facts demonstrated that Janet Vose intended to harm S.C. The court noted that it would also find that the harm to S.C. was "reasonably expected to result" from Janet Vose's actions.

¶ 10. The court turned next to the negligence claim against Jeffrey Vose, which was based on an allegation that he knew or should have known that Janet Vose was injuring S.C. The court noted that counsel for S.C. acknowledged that Jeffrey Vose had not committed the underlying physical injuries complained of, nor did counsel argue that S.C. had suffered injuries that were separable from those caused by Janet Vose's acts. The court explained that Allstate's policy excluded coverage for bodily injuries that were "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of *any* insured person." Thus, the court reasoned, because S.C.'s injuries were the result of Janet Vose's intentional acts, there was no coverage for the allegation of negligence against Jeffrey

Vose. Thus, the court found that Allstate had no duty to indemnify the Voses as a matter of law, and it therefore granted summary judgment to Allstate. This appeal followed.

¶ 11. Appellants first argue that Janet Vose is entitled to coverage under the policy because the underlying complaint alleges an "occurrence" within the meaning of the policy, and coverage is not excluded under the intentional or criminal acts exclusion. According to appellants, Janet Vose's acts were an "accident" because they stemmed from "her inability to control her own conduct due to her mental capacity." Appellants assert that Janet Vose did not intend to injure S.C., and the injuries suffered by S.C. were certainly "unusual" and "not to be expected" by S.C.

¶ 12. As discussed below, we conclude that the intentional acts of child abuse alleged in the underlying complaint are not "occurrences" within the meaning of Allstate's policy. Therefore, Allstate had no duty to defend or indemnify Janet Vose.

¶ 13. Our standard of review is familiar. We review a grant of summary judgment using the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c). A party is entitled to summary judgment if at least one legally sufficient defense that would bar a plaintiff's claims is presented. *Smith v. Day*, 148 Vt. 595, 597, 538 A.2d 157, 158 (1987).

¶ 14. An insurer has a duty to defend "whenever it is clear that the claim against the insured might be of the type covered by the policy." *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). This duty does not extend, however, to circumstances where, as a matter of law, there is no duty to indemnify. *Id.* An insurer's duty to defend is normally measured by comparing the terms of its policy with the underlying allegations in the complaint against its insured. *Id.* While resolution of this question is generally made on the language of the policy and the language of the complaint, we have also "looked to the known facts underlying a plaintiff's complaint to understand the application of policy provisions or exclusions." *Id.*

¶ 15. In this case, the underlying complaint alleged that Janet Vose physically and emotionally abused S.C. over a seven month period, including leaving S.C. in the bathtub with only the hot water running,

which caused S.C. to suffer severe burns. We must determine if these acts constitute an "occurrence" within the meaning of Allstate's policy. We do not consider the negligence claim raised against Janet Vose because it is inconsistent with the facts alleged in the underlying complaint. See *Serecky v. Nat'l Grange Mut. Ins.*, 2004 VT 63, ¶ 15, 177 Vt. 58, 857 A.2d 775 (refusing to consider negligence claim in determining insurer's duty to indemnify where facts alleged in complaint were inconsistent with unintentional conduct or injury); see also *TBH v. Meyer*, 168 Vt. 149, 153, 716 A.2d 31, 34 (1998) ("We must focus on the factual allegations in [the underlying complaint] and not on the legal theories asserted, and unless the complaint alleges facts within the coverage of the policies, [the insurer] has no duty to defend or indemnify.").

¶ 16. As previously noted, Allstate's policy defines an "occurrence" as an "accident" that results in bodily injury. In the absence of a specific definition, we give the word "accident" its plain meaning. *Serecky*, 2004 VT 63, ¶ 17 (defining accident as "an event that is undesigned and unforeseen.") (internal quotation marks and citation omitted). We read the policy's definition of "occurrence" together with the exclusion for bodily injuries that are "intended by . . . any insured person" to determine if there is coverage. *Id.* ¶ 18. In other words, to determine if Janet Vose's intentional acts constitute an "accident," we ask "whether the harm that resulted from the intentional act was . . . intended by the insured." *Id.* ¶ 19.

¶ 17. Appellants assert that there is a dispute of fact as to whether Janet Vose intended to harm S.C. In support of this assertion, they point to Vose's testimony that her act of throwing the child across the room was "a spontaneous incident," and she "didn't think of anything." They also maintain that Vose did not intend to scald S.C. by leaving her alone in the bathtub with the hot water running, instead, she merely "intended to be mean" and wanted S.C. to "be uncomfortable."

¶ 18. There is no factual dispute regarding Janet Vose's intent to harm S.C. Although an insured's intent often presents a question of fact, we have recognized that there are some actions that "are so likely to result in injury that, as a matter of law, the court will find that the injury did not result from an accident regardless of the actor's subjective intent or expectations." *Id.* ¶ 20 (internal quotation marks and citation omitted). In such cases, "courts conclusively presume intent to harm as a matter of law based on the nature and character of the insured's alleged acts, regardless of whether the insured asserts that

he or she had no subjective intent to injure." *Id.* (internal quotation marks and citation omitted).

¶ 19. We have previously applied the rule of inferred intent to acts of sexual abuse and sexual harassment. See *id.* ¶ 24 (applying rule of inferred intent to claims arising from acts of sexual harassment); *Meyer*, 168 Vt. at 149-50, 716 A.2d at 32 (no duty to defend or indemnify insured for intentional nonphysical sexual exploitation of a minor because insured's conduct was so certain to result in injury that his intent to injure could be inferred as a matter of law); *Nationwide Mut. Fire Ins. Co. v. Lajoie*, 163 Vt. 619, 620, 661 A.2d 85, 86 (1995) (mem.) (applying rule of inferred intent to claims of nonsexual verbal and psychological abuse and destruction of familial relationships where the nucleus of underlying action was sexual abuse); *Mass. Mut. Life Ins. Co. v. Ouellette*, 159 Vt. 187, 192, 617 A.2d 132, 135 (1992) (recognizing applicability of rule of inferred intent for acts of sexual abuse). We find the rule equally applicable here. Like acts of sexual abuse and sexual harassment, child abuse "is not the type of act that only occasionally results in harm — it is inherently harmful." *Serecky*, 2004 VT 63, ¶ 24. Leaving a blind and developmentally disabled child alone in the bathtub, turning on only the hot water, and leaving the room, is an act that is so likely to result in injury that Janet Vose's intent to harm can be inferred from the nature of this act alone. Requiring Allstate to indemnify Janet Vose under these circumstances would in effect require it to subsidize her acts of child abuse, and force its other policyholders to bear the expense of any passed-along costs. See *id.* (voicing same policy concern with respect to intentional acts of sexual harassment).

¶ 20. Because we infer Janet Vose's intent to harm from the nature of her acts, her testimony that she did not "intend" to harm S.C. is immaterial. We also reject appellants' assertion that there is a factual dispute as to whether Janet Vose lacked the mental capacity to control her conduct. As the trial court explained, the evidence offered in support of this assertion was insufficient to create a triable issue regarding Vose's mental state. Therefore, because Janet Vose's intent to harm can be inferred as a matter of law from the nature of her acts, the harm that resulted to S.C. does not constitute an "accident" within the meaning of Allstate's policy. There is therefore no "occurrence" within the meaning of the policy, and consequently, no duty to defend or indemnify. Based on our conclusion, it is unnecessary to address

whether the "professional services" and "regular resident" exclusions in Allstate's policy should apply to bar coverage.

¶ 21. We turn next to the negligence claim raised against Jeffrey Vose. Appellants maintain that Jeffrey Vose is entitled to coverage because the question of whether his alleged failure to protect S.C. is an "occurrence" is a factual one, and the intentional acts exclusion is not applicable to him as a matter of law. According to appellants, the underlying complaint alleged that S.C.'s injuries resulted from the unintended or unexpected consequences of Jeffrey Vose's conduct, and thus, his negligence must be treated separately from Janet Vose's acts in determining coverage.

¶ 22. These arguments are without merit. There is no coverage for the negligence claim raised against Jeffrey Vose because Allstate's policy excludes coverage for bodily injuries that are intended by "any insured." "[W]hen the exclusionary language refers to intentional acts of '*an* insured,' courts have uniformly concluded that the exclusion applies to all claims which arise from the intentional acts of any one insured, even though the claims are stated against another insured." *N. Sec. Ins. Co. v. Perron*, 172 Vt. 204, 220, 777 A.2d 151, 163 (2001) (footnote omitted). There is no meaningful difference between the terms "an insured" or "any insured." In this case, Allstate "intended that the wrongful act of *any* insured would void the policy," and it unambiguously drafted and included language to this effect in its contract with the insureds. *Id.* at 222, 777 A.2d at 164 (emphasis in original, internal quotation marks and citation omitted).

¶ 23. The negligence claim against Jeffrey Vose arises from, and is dependent on, the intentional acts of Janet Vose. Without her intentional acts of abuse against S.C., there could be no claim against Jeffrey Vose. Thus, the relevant act for determining coverage is Janet Vose's intentional abuse of S.C., not Jeffrey Vose's alleged negligent failure to protect S.C. from this abuse. See *id.* at 221, 777 A.2d at 163. Because there is no coverage for Janet Vose's intentional acts, there is no coverage for the derivative negligence claim raised against Jeffrey Vose. See *id.* Summary judgment was therefore properly granted for Allstate.

*Affirmed.*